Harold Lowman, appellee, v. Harold Kuecker, appellant.

No. 48681.

(Reported in 71 N.W.2d 586)

July 27, 1955.

Kelly, Spies & Culver, of Emmetsburg, for appellant.

Burt & Prichard, of Emmetsburg, for appellee.

HAYS, J.—Defendant appeals from a judgment for damages arising out of an automobile collision. No issue as to his liability is raised, hence a statement of the circumstances surrounding the collision is not necessary.

I. Error is assigned in the submission to the jury, the issue of future medical care.

Appellee's injury was a latent one and, as to future medical care, expert testimony was proper if not imperative. The sole testimony offered upon this question was that of Dr. A. J. Laubenthal, a chiropractor, who appeared as an expert witness for the appellee. The collision occurred in January 1951. Doctor Laubenthal saw appellee twice in February and once in December 1951; in 1952 he gave him some 46 treatments or adjustments, and in 1953, to the time of the trial in September, he had given some 26. He diagnosed the injury as a subluxated vertebra and stated that it would cause pain in the future as it has in the past. Without objection, he stated that appellee would require medical care and treatment in the future. The record shows the following: "Q. Could you say with reasonable certainty the extent of future medical care that will be required in this case?" Over the objection that the witness was not qualified, he stated: "A. Judging from the frequency with which the plaintiff has been in the office and in comparing the examinations that were made, his spinal pressure readings, I would say that this plaintiff may find it necessary to come to the office for care or some other preparations almost as frequently for quite some time as he has in the past here." Appellant's theory seems to be that a chiropractor is not qualified to testify as to "medical care."

"Medical" is defined as "pertaining or relating to the science of medicine or to the practice or study of medicine." Medicine is "the science and art of preserving health and preventing and curing disease." Ballentine's Law Dictionary; Black's Law Dictionary, Fourth Ed.; Commonwealth v. Zimmerman, 221 Mass. 184, 108 N.E. 893, Ann. Cas. 1916A 858; Bragg v. State, 134 Ala. 165, 32 So. 767, 58 L. R. A. 925.

Under the state's broad police power, matters involving the science of medicine are controlled by strict statutory regulations. Various courses of study are prescribed and different types of licenses are issued to those meeting the respective requirements. Chapter 148, Code, 1950, deals with the practice of medicine and surgery and provides that one who prescribes, or prescribes and furnishes medicine for human ailments or treats the same by surgery shall be engaged in such practice. It embraces the whole field of medicine and surgery. Chapter 151, Code, 1950, is entitled "Practice of Chiropractic" and provides that "Persons who treat human ailments by the adjustment by hand of the articulations of the spine or by other incidental adjustments" shall be deemed to be so engaged. Section 151.1, subsection 2. Chapter 146, Code, 1950, entitled "Basic Science Law," defines the basic sciences as: anatomy; physiology; chemistry; pathology; bacteriology; hygiene. Section 146.4 provides that anyone seeking a license to practice any system or method of healing, including physicians and surgeons and chiropractors must qualify in such sciences.

█ There can be no question but that the practice of chiropractic is the practice of medicine, although in a restricted form. This court so stated in State v. Boston, 226 Iowa 429, 437, 278 N.W. 291, where we said: "The practice of medicine and surgery is the practice of the healing art, and, unless some restriction be placed thereon by the legislature, the whole field of medicine and surgery is open to the practitioner. On the other hand, the practice of chiropractic, although recognized as a branch of the healing art, is throughout held and considered to be only one form of the practice, within well-defined limits, of the science of healing." See also 70 C. J. S., Physicians and Surgeons, section 15b; Commonwealth v. New England College of Chiropractic, 221 Mass. 190, 108 N.E. 895.

█ So-called experts may qualify as experts only in their particular field and in testifying as such are limited to that special field. Tri-State Broadcasting Co. v. Federal Communications Comm., 68 App. D. C. 292, 96 F.2d 564; Kelly v. Carroll, 36 Wash.2d 482, 219 P.2d 79, 19 A. L. R.2d 1174; Herzog's Medical Jurisprudence, section 112. In the instant case,

while the question of "future medical care" might well be extended beyond the limited field in which Doctor Laubenthal was qualified and licensed to practice, the record clearly shows that the witness understood the question, and considered it only as pertaining to his special field. For example, on cross-examination as to the various X rays, he stated: "My answer would be strictly within the chiropractic field. Medical interpretation would no doubt vary largely from mine. In fact, I have tried to interpret the films upon the knowledge I have. I am not qualified to interpret them otherwise." The testimony was competent; the witness was qualified; his testimony created a jury question and the issue was properly submitted to the jury.

II. Error is assigned in permitting an answer to a hypothetical question by Doctor Laubenthal. It is alleged that it invades the province of the jury and assumes facts not in the record. Assuming that it invades the province of the jury, the witness was appearing as an expert on such matters and could testify thereto. Grismore v. Consolidated Products Co., 232 Iowa 328, 5 N.W.2d 646. As to assuming facts not in the record, the record we have does not purport to contain all of the official transcript; the trial court heard all of the testimony, overruled the objection and permitted the answer. We are satisfied with the trial court's ruling.

III. Error is assigned in the reception of rebuttal testimony claimed to be highly inflammatory. The action was predicated upon the defendant's negligence in the operation of his automobile. On cross-examination he was asked, without objection, if he had been drinking on the day of the accident and answered that he had not. Appellant's witness John Kajewski, on cross-examination and without objection, stated that he observed the odor of intoxicating liquor on appellant immediately after the collision. On rebuttal, appellee testified as follows:

"Q. Did you at that time notice any odor on Mr. Kuecker? A. Yes, I did. Q. What was that odor? A. I couldn't say whether it was whiskey or beer, but it was the odor of one or the other when I opened the car door. Q. You noticed that when you opened the car door? A. Yes that is right.

"Mr. Spies: Move to strike the answer for the reasons giv-

en in the prior objection. It is immaterial here in connection with the issues in this case."

Assuming, but not holding, the above testimony to be immaterial, the above record presents no reviewable issue. Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 30 N.W.2d 97.

Other errors assigned deal with excessive verdict, $4250, the giving of certain instructions and the refusal to give some that were requested. We have examined these and find no merit.

Finding no error, the judgment of the trial court is affirmed. —Affirmed.

All JUSTICES concur.